Francis W. Flanagan, et al., as Directors and Officers of Marshall Savings & Loan Association, Plaintiffs-Appellants, v. Joseph E. Knight, as Director of Financial Institutions of the State of Illinois, Defendant-Appellee.

Gen. No. 50,493.

First District, Third Division.

January 20, 1966.

Barnabas F. Sears and Gerald M. Sheridan, Jr., of Chicago, for appellants.

William G. Clark, Attorney General, of Chicago (Robert J. Downing and Jay Erens, Special Assistant Attorneys General, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an interlocutory appeal from an order granting a temporary injunction.

In late December 1964, the defendant, Joseph E. Knight, Director of the Department of Financial Institutions of the State of Illinois, seized possession of the books, records and assets of the Marshall Savings & Loan Association, under authority of section 7–8 of the Savings and Loan Act (Ill Rev Stats, c 32, par 848 (1963)). In January 1965 the plaintiffs, directors and three of the officers of the association, exercised their statutory right (sec 7–12 of the Act) to challenge the validity of the seizure by filing the above captioned complaint to enjoin

further custody. On March 13, 1965, while the suit was pending and the director was in custody, the plaintiffs without having obtained the director's authorization, filed ten foreclosure proceedings in the name of the association to recover property securing delinquent loans made by the association. Each complaint in the foreclosure suits named the director as a defendant, questioned his authority, and alleged that he wrongfully claimed an interest in the subject matter of the suit and the sole right to institute and control the suit. Thereafter, the director petitioned the chancellor before whom the action to enjoin further custody was pending, to restrain the plaintiffs from maintaining the foreclosure suits without his approval and control. The petition was granted and a writ of injunction was issued without bond. The plaintiffs were enjoined from prosecuting the foreclosure suits except as such proceedings might be approved by the director; the order gave the director the sole right to appoint counsel for the association. The present appeal is from this order.

The plaintiffs seek reversal of the order on three grounds: (1) the director took custody of the association without warrant of law and he therefore lacked the custodial powers which the Savings and Loan Act confers upon him, and the effect of the injunction was to improperly secure to him the exercise of these powers; (2) the director cannot exclusively control the prosecution of foreclosure suits nor can he appoint the Attorney General to represent the association in prosecuting them, and (3) the issuance of the injunction was an abuse of the chancellor's discretion.

Section 7–10 of the Savings and Loan Act provides in part:

"Director's Powers During Custody.

"During the period in which the Director has such custody, the Director has all the powers which are

76

necessary or appropriate to accomplish the purposes of taking custody, including (but not limited to) the authority:

> "(a) To operate the business of the association, except as limited by the other subsections. of this section; exercising for that purpose all of the rights, powers, and privileges possessed by the officers and directors. . . ." Ill Rev Stats, ch 32, sec 850 (1963).

A savings and loan association is authorized to sue and be sued, to complain and defend in its corporate name (Ill Rev Stats, c 32, § 706(a) (1963)) ; and the board of directors of the association is authorized to exercise its business and affairs, and has all the powers which are necessary and proper to enable the association to accomplish its purposes (Ill Rev Stats, c 32, § 744(f) (1963)). Measures to protect the association's assets, such as foreclosure suits; are normal business operations which would be under the supervision of the board of directors. When the Director of Financial Institutions has taken custody, section 7–10(a) confers on him the control of the association's normal business operations and the right to exercise the powers possessed by the directors and officers, which would include the power to institute and prosecute foreclosure suits "necessary or appropriate to accomplish the purposes of taking custody." That the director's control of the normal business operations of the association is not shared with the association's officers and directors is shown by a comparison of subsections (a) and (d) of section 7–10. Subsection (d) provides that certain major business operations cannot be undertaken by the director except upon order of a court of competent jurisdiction or with the concurrence of two-thirds of the association's directors. The directors have a measure of control only in limited transactions and not even then if court orders are obtained. The injunction simply con-

firmed and made effective the director's statutory power to conduct the business affairs of the association, including the prosecution of foreclosure suits and the employment of counsel to do so.

The plaintiffs' first contention is based on the premise that the director lacked the statutory powers which section 7–10 confers upon him during custody because he was not lawfully in custody. This contention raises the same issues which are being litigated in the plaintiffs' action to enjoin further custody and they argue that the issuance of the injunction had the effect of a decision on the merits adverse to them.

■ Because competent management of financial institutions is essential to public well-being, the legislature empowered the Director of Financial Institutions to take custody when it appears to him that specified grounds exist (Ill Rev Stats, ch 32, par 848 (1963)). The legislature recognized that at times the director might be mistaken in his belief that the statutory grounds were present; section 7–12, which authorizes the action to enjoin further custody of the director, provides that the court may grant an injunction if it finds that legal grounds for taking custody "did not or do not then exist." (Ill Rev Stats, c 32, § 852 (1963)). The statute gives no indication that the legislature intended the director's custodial powers to be less than complete prior to conclusion of the action to enjoin custody. Indeed, such a result would tend to limit drastically the effectiveness of the Savings and Loan Act; for then in every custody the therapeutic measures of the director would be delayed.

■ The legislature provided a means to challenge the propriety of the director's custody: the statutory action to enjoin further custody; and it is in that action that the plaintiffs' allegations that statutory grounds for taking custody did not exist and that the director failed to take the procedural steps prerequisite to a valid custodian-

ship, and the director's counterallegations should be resolved.

We agree with the statement made by the plaintiffs in their answer to the director's motion for an injunction: "That it is contrary to law and equity and good conscience that such grave matters . . . [whether the director was lawfully in custody or a mere trespasser on the premises of the association] . . . be resolved upon an application for a temporary injunction with the limited right of review resulting from orders entered upon such application." The same thing can be said about the attempt to resolve the very same grave matters in the foreclosure suits. But contrary to the plaintiffs' belief, issuance of the injunction was not equivalent to a final adjudication of the validity of the director's custody. The chancellor stated explicitly that he was not making a decision on the ultimate issues in the case and that the injunction was temporary pending final determination of the cause. On the other hand, if the injunction had been denied it would have deprived the director of his statutory power of sole control over the business of the association; it would have permitted a dual operation of the association, the filing of suits and the making of decisions by the plaintiffs independent of the director; it would have rendered his custody ineffective and it would have confirmed the plaintiffs' position that his custody was illegal.

The plaintiffs' next point is that the injunction is improper because the director cannot exclusively control the prosecution of the foreclosure suits, and cannot appoint the Attorney General to represent the association. The director's power to operate the business of the association, given by subsection (a) of section 7–10, is subject to the provision of subsection (d) (5) that he cannot sell or compromise bad or doubtful debts of the association without an order of a court of competent jurisdiction

79

or the concurrence of two-thirds of the directors of the association. The plaintiffs' reasoning that because many foreclosure suits are compromised, the director cannot have the exclusive power to prosecute such suits, is fallacious. The injunction confirms the director's right to sole control over the foreclosure suits; it does not purport to authorize him to compromise debts owed the association. If, during or at the termination of the foreclosure suits, the director finds that a compromise is desirable, he will have to comply with the requirements of subsection (d)(5); but that does not lessen his right to sole control over the conduct of the foreclosure suits.

■■ The plaintiffs rely on People ex rel. Loew v. Marquette Nat. Fire Ins. Co., 351 Ill 516, 184 NE 800 (1933) and People ex rel. Board of Trustees v. Barrett, 382 Ill 321, 46 NE2d 951 (1943), for the principle that the Attorney General cannot represent a private corporation. The Marquette case held that the statutorily designated liquidator of an insurance company was not entitled to use the services of the Attorney General because there was no public interest in a liquidation proceeding. The court distinguished, however, between a liquidation proceeding and a statutory custodianship, and stated that in the latter the public interest in rehabilitating the regulated enterprise justifies use of the Attorney General's services. The Barrett case held that the fact that the University of Illinois is a public corporation did not by itself authorize the Attorney General to be its legal representative. That case is inapposite, for the Savings and Loan Act is a legislative declaration of the existence of a substantial public interest in the proper management of financial institutions. During the period of his custodianship, the director is entitled to employ the Attorney General to represent the association. Cf. People v. Continental Beneficial Ass'n, 204 Ill App 501 (1917).

80

Finally, the plaintiffs contend that the chancellor abused his discretion in granting the injunction because the usual conditions precedent to the grant of an injunction were not fulfilled and because the injunction was issued without bond. The plaintiffs argue specifically that the director failed to show probability of success on the merits of the action to enjoin further custody and to show irreparable harm, that the injunction does not maintain the last peaceable status between the parties, and that no evidence was heard despite conflicting allegations of material facts.

██ ██ A temporary injunction is an extraordinary remedy, and for that reason certain conditions precedent to the grant of an injunction have been judicially imposed to ensure that the need for injunctive relief is clearly established. In the anomalous circumstances of a case of this kind, however, imposition of all the usual conditions is made unnecessary by the legislative decision, expressed in section 7–10, to vest the director with power to operate the business of an association during custody. It would be impugning that decision if the director were required to show that he would be irreparably harmed if he were stripped of his statutory power. Similarly, the legislative decision to vest custodial powers in the director during the pendency of a statutory action to enjoin further custody would be subverted if he were required, prior to a determination of the merits of the action, to show the probable validity of his custodianship before being allowed effective exercise of his statutory power.

██ ██ The other conditions precedent to the grant of a temporary injunction were met. First, the injunction maintains the last peaceable status quo. The foreclosure suits were instituted after the director had taken custody of the association; at the time of taking custody the director had the statutory power to institute the suits,

and the plaintiffs were not then claiming that power. They wanted the foreclosure suits filed and offered to prosecute them jointly with the director. The director refused to dilute his authority. The plaintiffs did not take the dispute to court; they did not petition the chancellor in the pending case for authorization to file the suits themselves or ask that the director be ordered to join in filing them. Instead they proceeded on their own and asserted in each of the ten foreclosure suits that they had the sole right to prosecute the suits and that the director's claim to that right was without basis in law or equity. Until the validity of the director's control over the association was resolved, it was improper for the plaintiffs to place that issue in controversy in collateral proceedings and it was improper for them to start or maintain foreclosure suits without the authority of the director. The temporary injunction preserved the status quo of the director and the status quo of the pending case. Second, the injunction is not a decision on the merits of the statutory action, as has been noted. Third, the injunction does not put the association out of business. The association is not prohibited from maintaining the foreclosure suits, the officers and directors are. The injunction only effectuated the transferal of the control of the operations of the association from its officers and directors to the director. Fourth, there were no conflicting allegations material to the issuance of the injunction. The conflicting allegations cited by the plaintiffs concern the propriety of the director's taking custody and of his subsequent management of the association, and are to be determined in the pending action to enjoin further custody. The only issue proper to this appeal is whether the director is entitled to injunctive protection of his statutory power to prosecute the foreclosure suits.

▮ The party moving for an injunction is required to give bond unless for good cause shown the court is of the opinion that the injunction ought to be granted without bond. Ill Rev Stats, ch 69, par 9 (1963). The facts justifying the issuance of the injunction without bond must be alleged in the complaint, and a mere recital in the injunction order that the public interest is involved is insufficient. Town of Cicero v. Weilander, 35 Ill App2d 456, 183 NE2d 40 (1962). The injunction in the instant case was issued without bond because of "good cause having been shown, to wit, that the said Director is acting on behalf of the State of Illinois. . . ." Since the injunction is simply confirmatory of the power which the legislature vested in the director, the proper exercise of judicial discretion did not require the chancellor to condition the director's exercise of his statutory power upon his giving bond.

The injunction order is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.