SOUTH SIDE TRUST AND SAVINGS BANK OF PEORIA as Exer. of the Estate of Elizabeth F. Sutliff, Deceased, *et al.*, Appellees, *v.* SOUTH SIDE TRUST AND SAVINGS BANK OF PEORIA as Executor of the Estate of Laura Jeanette Sutliff McMaster, Deceased, *et al.*, Appellants.

(No. 71-40;

Third District—May 22, 1972.

William Wombacher, of Peoria, and Alfred Greening, of Springfield, both for appellants.

Baymiller Christison, James Sutherland, and Lyle Allen, all of Peoria, and Charles Herzog, of Chicago, for appellees.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Peoria County approving the final report of Appellee, South Side Trust & Savings Bank as Executor of the estate of Elizabeth Sutliff. Approval of the report was opposed by South Side Trust & Savings Bank as Executor of the estate of Laura McMaster, by William McMaster, sole beneficiary of the estate of Laura McMaster and by the Shriners Hospital for Crippled Children, the residuary beneficiary of the estate of Elizabeth Sutliff. Both South Side Trust & Savings Bank as executor of Laura McMaster's estate and William McMaster individually have appealed from the order of the Circuit Court while South Side Trust as executor of Elizabeth Sutliff's estate and the Shriners Hospital as appellees have filed briefs supporting the action of the trial court.

Warren Sutliff died testate on July 14, 1939. His widow, Elizabeth Sutliff, was his only heir at law. He also left surviving, a niece, Laura Sutliff, who was acknowledged for Inheritance Tax purposes as his daughter. His Will devised his entire estate to his wife, Elizabeth, "to have, hold and enjoy during her natural life, and to be used by her and disposed of during her natural life precisely the same as I might do were I living, * * * to use so much of the income and principal thereof as she may desire, with remainder over, of any of the said estate undisposed of by my said wife, Elizabeth F. Sutliff, at the time of her death, to my niece, Laura Jeanette Sutliff, in fee simple, to have and to hold the same forever." The Will designated and the estate was administered by co-executors Elizabeth Sutliff and John Olson. The estate was subse-

quently closed, the executors discharged, and no further administration was ever entered upon.

Laura Sutliff married the appellant, William McMaster in December of 1954 and then died on January 13, 1955. She devised her entire estate to her husband, William McMaster. The South Side Trust & Savings Bank of Peoria was appointed and served as executor of her estate. The administration was completed, the estate closed, and the executor discharged January 13, 1956. The inventory filed therein disclosed no interest in any estate which had been the property of Warren Sutliff.

Elizabeth Sutliff, the testator herein, died December 13, 1966. In her Will Elizabeth Sutliff made certain specific bequests, created a trust for the Shriners Hospital for Crippled Children and designated South Side Trust & Savings Bank as executor. The bank was duly appointed executor and undertook the administration of the estate pursuant to the terms of her Will.

After Elizabeth Sutliff's death William McMaster learned of the provision of Warren Sutliff's Will and thereupon instituted proceedings in Sangamon County to have South Side Trust & Savings Bank reinstated as executor of Laura McMaster's estate. The Circuit Court of Sangamon County which had jurisdiction of the administration of the estate originally, reinstated the executor over its objections, such reinstatement was affirmed after appeal to the Appellate Court for the Fourth District. Thereupon the bank as the executor of Laura's estate filed a supplemental inventory describing assets claimed under Warren Sutliff's Will in the possession of Elizabeth's executor.

As disclosed by the inventory of assets in the Warren Sutliff estate and the inheritance tax return based thereon so far as is material to this appeal, Warren Sutliff's estate consisted of three categories of property. The first category consisted of shares of stock in the South Side Trust & Savings Bank of Peoria, The First National Bank of Peoria and Peoria Malleable Castings Company. The second category consisted of an Oklahoma oil lease and the third category consisted of miscellaneous cash, stocks and bonds and real estate. All of the aforementioned property was turned over to Elizabeth after the administration of Warren's estate was completed.

With respect to the first category of property Elizabeth Sutliff executed an *inted vivos* trust agreement by the terms of which the shares of stock were transferred to the South Side Trust & Savings Bank as trustee for the benefit of the Shriners Hospital. In a collateral action William McMaster sought to replevin the shares of stock so transferred in trust and the hearing thereon was consolidated with the case which is the subject of this appeal. In the collateral replevin case the trial court decided in

favor of McMaster holding that he was entitled to such shares and the judgment of the court in such case was not appealed and has become final.

With respect to the Oklahoma oil lease, the bank deemed it to be an asset of Elizabeth's estate bequeathed to the bank as trustee for the Shriners Hospital. In this action the trial court held that McMaster's was entitled to the Oklahoma lease and vacated the transfer in trust. The propriety of this determination is not questioned on this appeal.

It is the third category of property which is the subject of this appeal and about which more will be said later.

In December, 1970, the South Side Trust & Savings Bank pursuant to its petition was granted leave to resign as the executor of the Elizabeth Sutliff estate contingent upon the approval of its activities. The bank had inventoried all of the property in Elizabeth Sutliff's possession at the time of her death as belonging to her estate and the final report consistent with the inventory continued such claim.

The South Side Bank as executor of Laura's estate and William McMaster each filed pleadings in opposition to the final report.

In opposing the executor's final report in Elizabeth's estate the bank as executor of Laura's estate and McMaster adopted substantially the same point of view. It was their theory that some of the property described in the final report as beloning to Elizabeth's estate was property in which Elizabeth had only a life estate, the remainder interest therein being owned by Laura under the terms of Warren's Will. Accordingly the executor of Laura's estate or her beneficiary was entitled to such property. The property claimed was the Oklahoma oil lease and the proceeds of the third category of property included in Warren's estate which was turned over to Elizabeth.

After this dispute arose South Side Trust employed an independent accountant to make an audit of Elizabeth Sutliff's financial affairs from the date of Warren's death in 1939 to her death in 1966. The audit which sought to reconstruct Elizabeth's financial affairs from the financial information available was the principal item of evidence introduced at the hearings on this dispute. The accountant preparing the exhibit offered some explanatory testimony but both parties concede that the audit report was the principal evidence considered by the trial court.

As reconstructed from the inventory and inheritance tax returns filed in Warren's estate the report concludes that the value of the third category of property at Warren's death was appoximately $60,000. The assets as identified in Warren Sutliff's estate were all sold by Elizabeth during the period from 1939 to 1954 for a consideration of $83,000. The proceeds from the sales of such inventoried assets were mingled with Elizabeth's

other funds and no identification after such commingling was possible. Furthermore according to the audit Elizabeth owned in her own right at the time of Warren's death, property valued at $145,000. During the period from 1939 until 1966 Elizabeth had income of approximately $327,000. During the same period her total expenses were approximately $286,000.

As observed earlier the collateral replevin action involving the validity of the *inter vivos* trust of shares of stock and the dispute concerning the executor's final report in the Elizabeth Sutliff estate were consolidated for hearing. In the collateral replevin action the court held that Elizabeth had no authority to make gifts of identifiable property in which she had only a life estate and hence McMaster was entitled to such shares of stock. In its order regarding the report by the executor in Elizabeth's estate the court concluded that the Oklahoma lease was also an identifiable asset of Warren's estate to which McMaster was entitled. Regarding the other property the court found "The greater weight of the evidence was that Elizabeth Sutliff exercised her authority and took the opportunity to spend and dispose of, for her own use and benefit, all of the assets left to her by her husband Warren Sutliff, except those stocks involved in the *inter vivos* gift and the Oklahoma oil lease. The Court, therefore, finds that there are no assets in the Estate of Elizabeth Sutliff, deceased, which were the property of Warren Sutliff, deceased, and in which Elizabeth Sutliff had only a life estate. The Court finds that neither the Estate of Laura Jeanette Sutliff McMaster nor William W. McMaster, as sole legatee of the Last Will and Testament of Laura Jeanette Sutliff McMaster has any interest or claim in any assets in the Estate of Elizabeth Sutliff, deceased." It is this finding and conclusion which appellants on this appeal argue is erroneous.

Before considering the merits of the appeal it is necessary to consider a preliminary question. After all the briefs were filed and shortly before this case was argued orally McMaster moved to strike the brief of South Side Trust as executor of Elizabeth Sutliff's estate contending that the bank in such capacity had no standing in this court because it had resigned as executor and because there was a conflict of interest in violation of its fiduciary duties. The bank filed objections to the motion and we took the motion and the objections thereto for consideration with the case.

■■ We find no merit to the motion. The record discloses that South Side was a party in the litigation from which this appeal results, that its resignation depended upon approval of its final report and distribution of assets, that the action of the trial court is not final because of appellant's appeal therefrom and that the bank has an interest in supporting

the propriety of its administration of Elizabeth Sutliff's estate. Furthermore the issue of whether the bank has or has not violated its fiduciary duties is irrelevant to appellee's standing in this court. Accordingly the motion to strike statement, brief and argument of South Side Trust as executor of Elizabeth Sutliff's estate is denied.

Appellants in support of their contention that the trial court's judgment is erroneous advance the following propositions. First, the burden rests on the executor to establish the propriety of his final account. Second, the evidence is insufficient to support the trial court's conclusion that Elizabeth Sutliff at her death had no property which she had received from her husband.

Appellees argue in support of the trial court's action first that the burden was on appellants to establish their right to any property included as assets of the estate of Elizabeth Sutliff and second that in any event the evidence amply supports the finding of the trial court. Additionally appellee Shriners Hospital devoted a substantial portion of its brief to the contention that the claims of the appellants were barred by Section 204 of the Probate Act. (Ill. Rev. Stat. 1965, Chap. 3, Sec. 204.) With respect to the principal issue of this case it is our conclusion that *Nielsen v. Duyvejonck*, 94 Ill.App.2d 224, 236 N.E.2d 743, is controlling of the issues presented on this appeal and the trial court's determination in this case is in accord with the views set forth. Indeed the *Nielsen* case and the authorities discussed and cited therein are the only significant cases cited by any of the parties relating to the propriety of the trial court's determination.

■■ The argument that the executor has the burden to establish the propriety of his final report is we believe a restatement of the general principle that an executor has a duty to administer the assets of an estate in accord with his statutory duty and the terms of the Will. In *Whittemore v. Coleman*, 144 Ill.App. 109 and *Nonnast v. Northern Trust Co.*, 374 Ill. 248, 29 N.E.2d 251, the two cases relied upon by appellants, the court remarks on the duty of an executor as preliminary to holding that the heirs had proved the administrator to be guilty of fraud with respect to claims charged against the assets of the estate. It should be observed in this connection that the office of an executor's final report is to evidence the executor's compliance with his duties to heirs, beneficiaries and creditors whose claims have been allowed in the estate.

■■ In considering the theories of the appellants as embodied in their pleadings filed in opposition to the executor's report the nature of the relief sought determines the legal significance of the pleading rather than the title which the pleading bears. Although the appellants characterize their action as objections to the final report and they were filed when

objections are ordinarily filed, the gist of the pleading is the claim by appellants that they owned and were entitled to assets described in the report as belonging to the decedent. Where such a claim is asserted we are aware of no principle of law and the appellants have cited none that places the burden upon the executor to establish ownership of property in the possession of the decedent. Contrariwise where an action or claim is asserted against an executor the burden of proof is upon the claimant to prove such claim. *Flanagan v. Knight*, 67 Ill.App.2d 71, 214 N.E.2d 557.

The parties have generally agreed that the Will of Warren Sutliff created a life estate in the property devised to Elizabeth with broad powers to sell and use the proceeds thereof with whatever of such property remaining at the death of Elizabeth to go to Laura. The only limitation on the powers or rights of the life tenant was the requirement that the property be used for the benefit of the life tenant. Based on this provision of Warren Sutliff's Will it was necessay for the appellants to prove either that property formerly belonging to Warren Sutliff was in Elizabeth's possession at the time of her death or if the property had been sold that there were identifiable proceeds from such sale in her possession at the time of her death.

■■ *Nielsen v. Duyvejonck, supra,* applies the principle that where a life tenant has the broad right to sell and use the proceeds for her benefit it will be deemed that absent evidence to the contrary the life tenant exercised such right. Whether the conclusion that a life tenant has exercised her right to dispose of proceeds of property received from a testator is inferred, assumed or presumed from the existence of the right is immaterial. Accordingly where it appears as in the case at bar that the proceeds of the sale of property in which the decedent had only a life interest were commingled and not identifiable, expenditures from such commingled funds exceeding the value of the life estate property is sufficient to justify the conclusion that the proceeds from the property were expended. Hence the property remaining need not be considered as the proceeds from the sale of life tenancy property.

■■ Appellants have insisted that the life tenant should have been required to have spent income from whatever source before invading principal and hence the fact that the life tenant spent more than she received is immaterial. Such an argument overlooks the provision of the Will creating the life tenancy and assumes that the testator intended something which he did not specify. So far as the Will is concerned the life tenant had the unlimited discretion to use the property received from the husband in preference to any other property and to do so neither involved bad faith nor a denial of any rights of the remainderman.

In this connection appellants have urged that it was the duty of the executor to prove that Elizabeth Sutliff was not guilty of bad faith in her expenditures during her life time. While *Nielsen v. Duyvejonck* is cited as authority for such proposition we do not believe it supports such contention. The observations of the court regarding the absence of bad faith were editorial comments reinforcing or buttressing the main conclusions of the court. Consistent with the views expressed earlier in the *Nielsen* case as well as the views which we have expressed in this case the court in *Nielsen* concludes it is perfectly proper to exercise the discretion to expend life estate funds in preference to other funds of the life tenant.

The trial court did not determine whether appellants' claims were barred by Section 204 of the Probate Act (Ill. Rev. Stat. 1965, Chap. 3, Sec. 204) apparently believing that its decision on the merits made a consideration of the effect of Section 204 unnecessary. In view of our decision affirming the trial court's action we likewise express no view on such issue. Finding no error in the judgment of the Circuit Court of Peoria County judgment is affirmed.

Judgment affirmed.

SCOTT and DIXON, JJ., concur.