*In re* ESTATE OF CHESTER THOMSON, Deceased (Rita Howe *et al.*, Minors, v. Stephen Thomson *et al.*, Appellees).

Fourth District   No. 4—85—0095

Opinion filed January 2, 1986.

Albert H. Hoopes, of Bloomington, for appellants.

Merrick C. Hayes and A. Clay Cox, both of Bloomington, for appellees.

Roger D. Lapan, of Bloomington, guardian *ad litem*.

JUSTICE MORTHLAND delivered the opinion of the court:

This appeal stems from a McLean County circuit court order closing the estate of Chester Thomson, discharging his executors, and releasing their bond. In closing the estate proceedings, the trial court declined to construe the provisions of a testamentary trust established

by the will. The circuit court overruled all objections to the estate accounts and reports, determining that many of those objections could be adequately addressed in a future proceeding to either construe the trust or for an accounting by the trustees. We believe that the issues raised by the appellants are better addressed before the executors are discharged. We therefore reverse the trial court judgment and remand for further proceedings.

The decedent, Chester Thomson, died testate on February 3, 1977. His will and a codicil were admitted to probate on February 22, 1977. The McLean County circuit court issued letters of office to the decedent's son, Stephen M. Thomson and to W. Loren Thomson, the decedent's nephew, as executors under the will. On June 10, 1981, Loren Thomson resigned as co-executor and was replaced by the Corn Belt Bank of Bloomington.

The decedent's will bears every indication of "a document dictated, but not read." The instrument appoints Stephen M. Thomson and W. Loren Thomson co-executors of the estate. Article I instructs these executors to pay all proper charges against the estate. In this regard, the testator directed that his "legatees and devisees share ratably in said expenses" and contribute ratably to taxes on the estate. The will seeks to exempt the testator's wife from paying estate taxes to the extent her legacy qualifies for the "marital deduction," presumably referring to the marital deduction under Federal estate tax law.

Article II gives the testator's entire estate in trust to Stephen M. Thomson and W. Loren Thomson, the son and nephew who were appointed co-executors. The article then proceeds to give the trustees a number of instructions. However, we will set forth only those which are relevant to our disposition of this case. The trustees were instructed to convey certain farmland and other city tracts to trustee-executor Stephen Thomson and to convey all of the decedent's property in Arizona to his stepdaughter, Donna Jean Wannemacher. The will then instructs the trustees to hold in trust certain property on North Main Street in Normal (North Main trust). This trust property includes the Falcon Motel, which is the subject of much dispute in this litigation. The trustees are instructed to pay the income from the North Main trust to the decedent's daughter Rita "for life and then to her children, share and share alike, for their needs and best interests." The trustees have the power to invade principal and are "likewise given the discretion as to how much income to pay her [Rita] or said children from time to time." The will provides that the trust shall terminate "as to each child when said child reaches the age of 25

[later altered to 30] and the trustees shall pay to him or her his proportionate share of principal and accumulated income then." The North Main trust is to terminate when the last child reaches the proper age and if any child predeceases the daughter Rita, the other children are to receive the deceased child's share.

The second article then directs the trustees to convey one-half of the decedent's residual estate to his wife Orphelia in fee simple. The remaining half of the residual estate is to be held in trust and the trustees are to pay "such portion of income and principal as they see fit to [Orphelia] for her lifetime *** and upon her death, to pay and convey all accumulated income and principal into the trust hereinafter created for my grandchildren."

The will then provides that the trustees shall have the "absolute power and discretion to mortgage and remortgage the properties under this trust for the purpose of equalizing the value of the gifts as best they can to my three children and with a view to my said wife's taking her residence house debt-free except for real estate taxes as well as the other property going to her and qualifying for the marital deduction." Uncertainty as to the correct interpretation of this so-called "equalization clause" has prompted much discussion and argument between the parties both in the trial court and before this court.

Finally, the second article grants the trustees the authority to "withhold payment of income or conveyance of property hereunder during the pendency of probate proceedings in their absolute discretion." The discretion to withhold payment temporarily was granted for the express purpose of increasing the cash available to the estate during estate administration.

The third article appoints Stephen and Loren Thomson as co-trustees of yet another trust to be funded by the residual estate not given outright to the decedent's widow. These trustees are to pay the income from the trust to the grandchildren or their guardians until each grandchild shall attain the age of 25. As each grandchild reaches 25 they are to receive their proportionate share of principal and accumulated income.

Article III also provides that the trustees of the various trusts may resign at any time and provides them with the power to designate their successor trustee. The trustees are to receive compensation for their services and "are not to be required to account to any Court to [sic] their acts and doings as trustees or make reports to any Court." This provision is explicitly extended to each of the trusts which the will creates.

The executors-trustees completed the conveyances directed by the

will to Stephen Thomson and Donna Jean Wannemacher on or about January 20, 1978.

On September 11, 1978, a fire destroyed the Falcon Motel on the North Main trust property. The executors-trustees collected $169,213 in insurance proceeds from this fire. The executors used these proceeds to pay taxes, fees, and other costs of estate administration on behalf of Stephen Thomson and Donna Jean Wannemacher, as well as Rita Howe and her children. Neither Stephen Thomson nor Donna Jean Wannemacher paid any portion of the taxes or expenses out of the properties which had been conveyed to them in January 1978.

The executors filed several interim reports and accountings prior to the final account and report. These interim reports and accounts are not directly in issue; however, they ultimately impact the final account and report, which is the subject of this appeal. On October 21, 1983, the executors filed a current report covering the period February 1, 1981, through June 30, 1983. The circuit court held a hearing on this report on October 21, 1983, and ordered appointment of a guardian *ad litem* for the minor children of Rita Howe. The guardian *ad litem* filed objections to the current report on November 17, 1983, and a hearing was held on those objections. However, at this hearing, the circuit court determined that resolution of the issues regarding construction of the trust should be postponed until the estate was formally transferred from the executors to the trustees. Accordingly, the court directed the executors to prepare a final report, concerned only with expenses of administering the estate and conveyance of the estate to the trustees.

On January 11, 1984, the executors filed a final report and account; the trustees acknowledged receiving the estate's remaining assets from the executors. Rita Howe and her minor children each filed objections to the final report and a hearing was held on the report and objections on January 18, 1984. The final account covered a period ending November 16, 1983. It was supplemented by an amended final report filed on November 13, 1984. On November 19, 1984, Rita Howe and her minor children filed objections to the amended final report. No further hearing was had on these objections because the circuit court ruled that the amended report was simply an aid to the court in closing the estate and not an invitation for further objection. Among other things these objections questioned the format of the executors' reports in general and the specific disposition of items labelled "contract receivable Patterson" and "accumulated depreciation" totalling $206,889.60.

On December 5, 1984, the circuit court entered an order discharg-

ing the executors and releasing them from their bond. The court over-ruled all objections to the executors' accounts and suggested that many of the objections raised by Rita Howe and her minor children should be raised in a subsequent proceeding against the trustees. The circuit court found that the assets of Chester Thomson's estate were to be placed in a trust created by his will and that the assets of the estate had been distributed to that trust.

On appeal, Rita Howe and her minor children again raise their objections to the executor's reports and to the manner in which the estate administration was handled. Specifically, the appellants question the adequacy of the executors final report, suggesting that its overall format was deficient, that it failed to account for the accumulated depreciation and "account receivable Patterson" which had previously appeared, and also failed to show compliance with the Principal and Income Act (Ill. Rev. Stat. 1977, ch. 30, pars. 159 through 176). The appellants also argue that the executors-trustees improperly distributed the income to the various beneficiaries and claimed that the Principal and Income Act entitled them to all income earned by trust properties during estate administration. Third, the appellants argue that the executors failed to require all beneficiaries to share ratably in estate expenses. Specifically, Howe points to the use of the Falcon Motel insurance proceeds on behalf of all three of the decedent's children. Fourth, the appellants claim that the executors-trustees failed to properly interpret the "equalization clause," thus benefiting Stephen Thomson and Donna Jean Wannemacher and failing to give Rita Howe and her children their due as provided in the will. Fifth, the appellants allege that fees to attorneys, executors and trustees were improperly paid without permission of the court to the detriment of the estate beneficiaries. Sixth, the appellants argue that the executors' delay in transferring the assets of the estate to the beneficiaries violated section 24—10 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 24—10). Finally, the appellants argue that the circuit court erroneously failed to address their claims that the executors-trustees had violated their fiduciary duty to the estate beneficiaries by transferring property to Stephen Thomson before estate administration was finalized. We will address each of these arguments in turn.

■ Initially, we note that although the terms of the decedent's will provide that his trustees shall not be accountable to any court, this does not mean that they or the trust are not subject to supervision by the courts of this State. "Where great discretion is vested in the trustee the exercise of such discretion is subject to the control of

a court of chancery." *Maguire v. City of Macomb* (1920), 293 Ill. 441, 453, 127 N.E. 682, 687; accord, *Johnson v. Sarver* (1953), 350 Ill. App. 565, 113 N.E.2d 578.

■ We next address the adequacy of the format used by the executors in their accounts and reports. The Probate Act of 1975 does not designate a particular format. The Act simply requires a statement of all receipts and disbursements for the time-period in question and a list of all estate assets. This statement "shall be accompanied by such evidence of the disbursements as the court may require." (Ill. Rev. Stat. 1977, ch. 110½, par. 24—1.) Absent statutory requirements, no particular form of account is required. (19 Ill. L. & Prac. *Executors & Administrators* sec. 321 (1956).) Keeping in mind that the purpose of the account is to evidence the executors' compliance with their duties to heirs, beneficiaries, and creditors (*South Side Trust & Savings Bank v. South Side Trust & Savings Bank* (1972), 5 Ill. App. 3d 474, 284 N.E.2d 61), we will limit our review to specific allegations of impropriety. Unless the circuit court's determination as to the propriety of the executors' accounts was manifestly or palpably erroneous, this court will not upset that decision. *Weiss v. Weiss* (1983), 113 Ill. App. 3d 793, 447 N.E.2d 437.

■ We do not believe the format of the accounts in the present case is improper *per se*. These accounts contain a summary of transactions attributable to each property, a list of assets and liabilities, and a list of all checks paid out. The executors' report further notes that supporting documents for each transaction are available from the co-executor Corn Belt Bank. Apparently these accounts were used for both estate and tax purposes, which undoubtedly explains the purported irregularities in format complained of by the appellants.

■ With regard to specific allegations of impropriety, we find that the accounts show "contract receivable Patterson" to have been converted to cash by a final payment before the trustees gave their receipt for the estate assets. However, we do not believe the executors have satisfactorily accounted for the $206,899.60 earmarked "accumulated depreciation" as of June 30, 1983, nor for depreciation expense accrued after that date. The executors' reports suggest that they treated this depreciation expense as a cash expenditure—it was clearly used to reduce net income from rental properties, including those designated for the North Main trust (of which the appellants are beneficiaries). What is not clear from the reports is precisely what happened to the cash income offset by the depreciation deduction. The executors' explanation that the depreciation expense was a bookkeeping entry which "evaporated" upon transfer of the estate into trust is

unsatisfactory. Moreover, the trial court makes no finding as to the ultimate disposition of the income offset by depreciation. Absent some indication as to the disposition of the depreciation expense account, the circuit court erred in approving this aspect of the executors' final account and report.

We also believe the executors' accounts are deficient in failing to show compliance with the Principal and Income Act as required by section 24—3(d) of the Probate Act of 1975. (Ill. Rev. Stat. 1977, ch. 110½, par. 24—3(d).) Section 5 of the Principal and Income Act, as effective at Chester Thomson's death, provided that:

> "(1) All income to which the personal representative is entitled, earned or accrued during the period of administration of the estate *** and not payable to others or otherwise disposed of by Will, shall be distributed as income among the trustees of any pecuniary legacies in trust, the trustees of any trusts created out of the residuary estate and the other persons entitled to the residuary estate *** in proportion to their respective interests ***. [E]xpenses ordinarily chargeable to income shall be charged against income and all other expenses incurred in connection with the settlement of the decedent's estate, *** shall be charged against principal. *** When the personal representative operates a trade, business or property the term 'income' as used in this subsection (1) means the net income derived therefrom. ***
>
> (2) The income beneficiary of any trust shall be entitled to income from the date of the testator's death.
>
> (3) The legatee or devisee of property specifically bequeathed or devised shall be entitled to the income earned or accrued on the property during the period of administration less expenses chargeable under subsection (1) against the income therefrom, and all expenses in excess of income shall be charged against the property." Ill. Rev. Stat. 1977, ch. 30, par. 163.

The Principal and Income Act clearly entitled Chester Thomson's testamentary trustees to income earned by trust properties from the day of his death. (*In re Estate of Hall* (1984), 127 Ill. App. 3d 1031, 469 N.E.2d 378; see also *In re Estate of Enright* (1982), 106 Ill. App. 3d 914, 436 N.E.2d 681.) As a result, the beneficiaries of the North Main trust are entitled to all income which those trust properties have earned since the testator's death, subject to the terms established by the will.

■ Nevertheless, we must reject the claim that Rita Howe is en-

titled to the income from the properties conveyed to Stephen Thomson and Donna Jean Wannemacher. Section 5(3) of the Principal and Income Act (Ill. Rev. Stat. 1977, ch. 30, par. 163(3)) entitled specific devisees to income from devised property beginning with the testator's death. The fact that a trustee momentarily takes title to property which ultimately must be conveyed to Stephen Thomson or Donna Jean Wannemacher does not change this result. Since the trustees of the decedent's estate had no duties to perform with regard to these properties, we view the resulting situation as identical to that which would exist if no trust were interposed.

■ We next address the contention that the executors failed to require all beneficiaries to pay their proportionate share of estate expenses and, more particularly, the use of the Falcon Motel insurance proceeds on behalf of Stephen Thomson and Donna Jean Wannemacher as well as the appellants. This issue turns upon the construction given the provisions of the testamentary trust, particularly the "equalization clause." Since the decedent's estate could not be properly transferred to his trustees prior to payment of taxes and other estate expenses, the circuit court erred in closing estate administration without authoritatively construing these testamentary provisions.

To this point, the executors-trustees have assumed that the trust referred to in the "equalization clause" is the North Main trust. Accordingly, the executors attempted to equalize the value of the gifts of the devises to Stephen Thomson and Donna Jean Wannemacher with the value of the North Main trust *corpus*. Since the properties conveyed to Stephen Thomson were valued at $170,106 and the properties conveyed to Donna Jean Wannemacher were valued at $195,291, while the North Main trust *corpus* was appraised at over $500,000, the executors used the insurance proceeds from the Falcon Motel fire to equalize the gifts to the three children. Under their interpretation of the "equalization clause," the executors were required not only to use the insurance proceeds on behalf of all three children, but to transfer additional portions of the North Main trust to the other two children.

While it is not our intention by this opinion to construe the decedent's will, we question the executors' interpretation of the "equalization clause" and their resulting distribution of the estate's assets in two respects. First, the executors' interpretation of the clause attributes the North Main trust properties to Rita Howe without distinguishing her life estate in the income from the remainder which is left to her children. The language of the will strongly suggests that Rita Howe has no legal claim to the North Main trust *corpus,* despite the

trustees' power to invade principal. (See *Dean v. Northern Trust Co.* (1914), 266 Ill. 205, 107 N.E. 186.) Moreover, since the trustees have discretion in paying the income to the beneficiaries, it is not clear that Rita Howe has a claim even upon the trust income. Accordingly, the gifts which the will suggests must be "equalized" are the gift of trust *income* to Rita Howe, the gift of Arizona property to Donna Jean Wannemacher, and the gift of property to Stephen Thomson.

The executors' interpretation of the equalization clause may contain an even more fundamental error than that of misidentifying the nature of the gift to Rita Howe: misidentifying the trust which is to be used to equalize the gifts among the decedent's three children. The physical position of the "equalization clause" immediately following the provisions establishing the residual trust and a full page after the provisions for the North Main trust, as well as the apparent overall scheme expressed by the decedent's will suggests to us that the residual trust is to be the source of funds or property for equalizing the gifts to the three children. On remand, we suggest that counsel for all parties read the will carefully with an eye to assisting the court in construing the instrument's terms.

■ The appellants also question the propriety of various executor, trustee and attorney fees. Rita Howe and her children objected to these fees as contained in the amended final report, yet no hearing was ever held on this issue. Although we do not express any opinion as to the value of the services rendered to the decedent's estate, we are shocked at the procedure used in paying these fees. The Probate Act of 1975 entitled estate representatives and attorneys to a reasonable fee for their services. (Ill. Rev. Stat. 1977, ch. 110½, pars. 27—1, 27—2.) Nevertheless, the statute clearly contemplates that the representative will seek court approval prior to paying such fees. The court has a great deal of discretion in awarding compensation to executors and attorneys. (*In re Estate of Hall* (1984), 127 Ill. App. 3d 1031, 469 N.E.2d 378.) In exercising that discretion, the court must consider the facts of the individual case. Factors impacting the size of the executors' or attorney fees include: the size of the estate, the work done, the skill evidenced by the work, time expended, the success of the efforts involved, good faith, and the efficiency with which the estate was administered. *In re Estate of Grabow* (1979), 74 Ill. App. 3d 336, 392 N.E.2d 980.

In the present case the executors never sought court approval for their own or for their attorneys' fees, yet these fees were paid regularly with no attempt to document the services received for those fees. At present, the record evidences only the astonishing regularity

with which the estate paid for various services. On remand, the circuit court should carefully consider the propriety of the various fees paid the decedent's estate, directing the parties to supply whatever substantiation the court deems necessary.

■ The circuit court must also reconsider whether the executors became liable for interest by improperly delaying distribution of the estate's personal property. Section 24—10 of the Probate Act of 1975 provides that a personal representative may be liable for 10% on all personal property not distributed within two years of the decedent's death unless good cause is shown for the delay. (Ill. Rev. Stat. 1977, ch. 110½, par. 24—10.) The statute is penal in nature and intends to make it unprofitable for executors and administrators to use estate property for their own benefit rather than distributing the property as soon as feasible. The executors need not anticipate this objection, but they must show cause for the failure to distribute the personal property once a challenge is raised. *In re Estate of Kapraun* (1959), 21 Ill. App. 2d 231, 157 N.E.2d 700.

In their own defense, the executors of Chester Thomson's estate point to the protracted dispute with tax authorities, the objections raised by Rita Howe and other beneficiaries, and the relative dearth of personal property in the estate. This last point may be well taken; much of the estate consisted of realty, and even the contract receivable which the appellants suggest is available for distribution was, in fact, mortgaged beyond its actual value. Assuming that personal property was available, however, the executors must make a stronger showing of good cause for the delay. The filing of objections by the appellants, along with the ensuing hearings, may justify the failure to distribute the personal estate (see *In re Estate of Lindberg* (1977), 49 Ill. App. 3d 154, 364 N.E.2d 555), yet we must note that no objections were filed to the accounts and reports until more than six years after the decedent's death. This delay of over six years in distributing assets is, thus far, unexplained. As for the asserted tax disputes, we know only that the inheritance tax was apparently not paid until 1983—the executors have not yet explained why such a delay was reasonable. In short, the executors have not yet advanced any reason for their failure to distribute the personal assets. We do not intimate any opinion as to the executors' liability for failure to distribute the personal estate, but the circuit court should require some showing by the executors in this regard.

■ In light of the foregoing discussion, the circuit court must explicitly address the issue of whether Stephen Thomson breached his fiduciary duty to Rita Howe and her children or any other beneficia-

ries when he transferred property to himself in January 1978. The trial court's December 5, 1984, order implicitly finds no breach of fiduciary duty. However, since we have determined that the court erred in not construing the terms of the testamentary trust, we believe that the issue of Stephen Thomson's fidelity to the estate's beneficiaries is an issue which clearly must be addressed.

For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

WEBBER and TRAPP, JJ., concur.