In the matter of the estate of JOEL CORRINGTON, deceased.

*Filed at Springfield March 28, 1888.*

1. COUNTY COURT—*equitable jurisdiction—in the settlement of estates.* The county court, as a court of probate, in the settlement of estates and the adjustment of the accounts of executors, administrators and guardians, exercises equitable jurisdiction, so far as may be necessary to adjust the same.

2. So if an executor, either through bad faith or by failure to exercise reasonable diligence, diminishes the funds in his hands for distribution under the will, he should be required to account for it, and the county court is clothed with ample jurisdiction and power to compel a just and true accounting, and to require him to charge himself with the deficit.

3. ADMINISTRATION OF ESTATES—*liability of executor or administrator for a devastavit or waste.* Acts of negligence in the control or disposition of an estate by the executor or administrator, careless administration of it, or a willful disposition of the assets of the estate, whereby the rights of creditors or legatees or parties entitled in the distribution are injured, amounts to a *devastavit* or waste, for which the executor must account.

4. SAME—*sale of land at less than its value—liability of the executor—land to be sold and proceeds divided—a bequest of money, not a devise of land.* Where a testator, by his will, directs the sale of his land by the executor, and the division of the proceeds equally among the testator's children, this will be a devise of money and not a devise of land; and the executor may be held responsible for the value of the land, when he corruptly, or through gross negligence, sells the same for less than its value, and the county court may charge him, on final settlement, with such a sum as he might have realized by reasonable care and diligence.

5. SAME—*when executor liable for costs of his accounting.* Where an executor makes out an improper and incorrect account of his administration, or is guilty of such misconduct as to render litigation necessary for the protection of the rights of the distributees, there will be no error in requiring him personally to pay the costs of the proceeding.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. KETCHAM & HATFIELD, for the appellant:

The executor derives his authority from the will, and not the court, and the county court has no further authority than to see that the will is executed. It can not control his discretion. If he acts in good faith he can not be held liable for a loss. *Whitney* v. *Peddicord*, 63 Ill. 251.

For any abuse of the trust, or sale made in bad faith, the remedy is in a court of equity.

All the costs under the reversed decree should have been taxed against the objectors or directed to be paid in due course of administration.

Messrs. PATTON & HAMILTON, for the appellees:

If the executor sold the land for less than its value when more might have been had for it, this was waste or *devastavit*. Lomax on Executors, chap. 4, sec. 3; *Wadsworth* v. *Connell*, 104 Ill. 369; *Corrington* v. *Corrington*, 15 Bradw. 393.

The probate court, it has been repeatedly held by the Supreme Court, may exercise equitable jurisdiction in the settle-

ment of estates,—not full jurisdiction, but such as is adapted to its organization and mode of proceedings. *Wadsworth* v. *Connell*, 104 Ill. 369; *Moore* v. *Rogers*, 19 id. 347; *Hurd* v. *Slaten*, 43 id. 348; *Dixon* v. *Buell*, 21 id. 203; *Water Power Co.* v. *Webster*, 26 id. 233.

The land devised by Joel Corrington to his children is to be treated as a devise of money, and not of land. The rule is, that a devise of real estate, which, by the provisions of the will, is to be converted into money, and that money distributed among the devisees, must be treated as a devise of money, and not of land. *Baker* v. *Copenbarger*, 15 Ill. 103.

The law does not require any one to accept the office of executor, but if one does accept it he must discharge its duties with as much fidelity and care as prudent men ordinarily bestow upon their own affairs. But where the executor has acted with reasonable diligence, and an honest desire to do his duty faithfully, mere errors of judgment or opinion will not render him liable. The executor, however, must be held to that degree of diligence which men ordinarily use in their own affairs, and if, through lack of that, the interests of the trust estate are damnified, the executor makes up the loss. *Whitney* v. *Peddicord*, 63 Ill. 251.

Section 21, chapter 33, of the Revised Statutes, provides, that "in all cases of appeal from the decision of a county court in matters of probate and administration of estates,   *   *   * the costs shall be in the discretion of the Appellate Court."

Where the costs are in the discretion of the court, an appellate court will not interfere. *Lee* v. *Quirk*, 20 Ill. 392; *Smith* v. *Kinkaid*, 1 Bradw. 620.

As a general rule, an executor or administrator should not be made personally liable for costs, but should he act *mala fide*, or be guilty of gross negligence, he should be held personally responsible for costs. *Burnap, Admr.* v. *Dennis*, 3 Scam. 478.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The executor of the last will of Joel Corrington, deceased, on May 23, 1883, presented to the county court of Morgan county his report as executor, in which, among other items, he charged himself with $2389.20 received from J. B. Corrington for $79\frac{64}{100}$ acres of land, and $5860.80 received from William Corrington for $195\frac{86}{100}$ acres of land, sold by said executor to said parties, respectively. To this report exceptions were filed, none of which are before us by this appeal, except the fourth, which was an exception to the said items for the sale of said land, because the sales, as reported, were for a sum greatly less than the actual cash value of said lands, and less than the executor might reasonably have realized therefrom. The county court sustained this and other exceptions, and upon appeal to the circuit court said fourth exception was again sustained, and the executor ordered by the court to charge himself with the additional sum of $2750, being the amount found by that court to have been charged less than the executor should have realized from the sale of said land. Upon the last appeal the finding and order of the circuit court were affirmed by the Appellate Court, and the executor prosecutes this further appeal.

The jurisdiction of the county court to require the executor to account in respect of this item is questioned. The contention is, that where an executor is empowered by the terms of the will to sell real estate, the court may require him to execute the will in that respect; but when a sale is made and reported, the authority of the probate court is at an end, and resort must be had to a court of chancery, by the party injured, to correct an abuse of the trust, or for relief.

The courts of probate, in the settlement of estates and the adjustment of the accounts of executors, administrators and guardians, exercise equitable jurisdiction, so far as may be necessary to adjust the same. *Dixon* v. *Buell*, 21 Ill. 203; *Hurd* v. *Slaten*, 43 id. 348; *Wadsworth* v. *Connell*, 104 id. 369; *Millard* v. *Harris, Exr.* 119 id. 185.

The land mentioned as sold, in the report of the executor, was, by the will of Joel Corrington, deceased, duly admitted to probate, devised to be sold by said executor, and the proceeds thereof divided equally among the testator's six children, named in the will. The intent of the testator to devise the money arising from the sale of said land, is clearly expressed. There was here, then, a devise of money, and not of land. It was said in *Fletcher* v. *Ashburner*, 1 Bro. C. C. 497, "that nothing is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted." (Williams on Executors, 414, *et seq.; Wheldale* v. *Parkridge*, 5 Ves. 396; 2 Story's Eq. 212-214.) Where, as in this case, a will requires real estate to be converted into money, and there is no election by the devisee to take the real estate directed to be converted, it is to be considered as converted from the time of the testator's death. *Wurt's Exrs.* v. *Page*, 4 C. E. Green, 365; *Dodge* v. *Pond*, 23 N. Y. 69.

The principle that a testator may thus impress upon real estate the character of personalty, and that whoever takes the property under the will takes it in the character thus impressed upon it, has been repeatedly held by this court. (*Baker* v. *Copenbarger*, 15 Ill. 103; *Jennings* v. *Smith*, 29 id. 116; *Rankin* v. *Rankin*, 36 id. 293.) In equity, at least, this devise was of a fund distributable by the executor to the devisees named in the will, and, as such, was in his hands by virtue of his office, and which he must account for under the direction of the probate court. By the will the executor was clothed with discretion as to the time and manner of making sale of these lands, but he must exercise such discretion with fidelity to the interests of the beneficiaries, and in a reasonable and prudent manner. Having accepted the trust, he was bound to execute it with integrity, and while he can not be held liable for mistake in matters of judgment or opinion, where ordin-

arily prudent business men might be alike mistaken as to what was for the best interests of the estate, it was his manifest duty to make a fair and honest sale, for the best price reasonably obtainable. He was required to act in good faith, and with that degree of reasonable diligence ordinarily employed in like business affairs by men of common prudence, and if, from his failure to do so, injury and loss occurred to the distributees under the will, he must make good the loss so occasioned. Acts of negligence in respect of the control or disposition of the estate, careless administration of it, or a willful disposition of the assets of the estate, whereby the rights of creditors or legatees, or parties entitled in distribution, are defeated, amount to a *devastavit*. While no person is required by law to accept the trust of the execution of a will, yet if one does accept, he must perform it, using due and reasonable care and diligence to prevent loss to the estate. (*Whitney et al.* v. *Peddicord*, 63 Ill. 249; Williams on Executors, 1804-1816; Lomax on Executors, chap. 4, sec. 3.) If, then, the executor, either through bad faith or by failure to exercise reasonable diligence, diminished the funds in his hands for distribution under the will, he should be required to account for it, and the probate court is clothed with ample jurisdiction and power to compel a just and true accounting, and to require him to charge himself with the deficit.

It is also contended that the evidence does not warrant the finding. The fund coming to the hands of the executor was, in respect to the matter being considered, to be measured by the amount for which the lands might have been sold by the exercise of reasonable diligence and prudence by the executor. He is shown to have refused an offer of $33 per acre for the land, which he shortly after sold to his sons for $30 an acre. The excuse given for not accepting the offer made was, that it was in part on time, and he preferred to sell for cash. If this was so, it is apparent that he sold to his sons wholly on time, and when cited by the court to account, advanced the money from his own pocket to make the payment for the land

at $30 per acre. It appears that on various occasions, prior to the sale to his sons, he was applied to by persons, some of whom wished to purchase, for the price at which the land could be purchased. To some of these persons he stated the lowest price at $45, to others, $50 an acre, and refused to take $40 an acre when applied to by the witness Harrison Robinson, in the fall of 1881 or spring of 1882. It appears from the testimony of a number of witnesses, whose means of knowledge seems ample, that the lands were worth not less than $40 an acre, and could have been sold for that price, while some of the witnesses put its value as high as $45 and $50. The executor, however, at private sale, without advertising the land, or otherwise, so far as appears, attempting to attract purchasers, sold the two tracts mentioned, in the spring of 1882, to his sons, at $30 an acre. It is true, the evidence is conflicting as to the value of the land; but as already said, the probate, circuit and Appellate courts have found that the preponderance of the evidence supports the contention that $40 per acre could have been realized by the executor with the exercise of reasonable diligence and a proper regard for his duty in the execution of the trust imposed on him by the will, and we are unable to say there is error in this respect.

There are other minor objections urged, one of which, only, will be noticed. The court below taxed the costs of this investigation against the executor, personally, and this is assigned as error. The costs were in the discretion of the court, and we are not prepared to say the discretion was abused. If the willful misconduct of the executor, or his gross negligence in conducting his trust, rendered litigation necessary for the preservation of the rights of the distributees, it is manifestly just that he should bear the expense, rather than it should fall upon them.

We find no error in this record authorizing a reversal, and the judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*