George Brady Ham, as Administrator of the Estate of Margaret E. Ham, Deceased, Petitioner-Appellee, v. Geneva Ham Marshall, Respondent-Appellant and Forest B. Ham, et al., Respondents-Appellees.

### Gen. No. 11,850.

Third District.

February 17, 1964.

D. J. McRae, and Andrews & Andrews, both of Kewanee, for appellant.

Brian & Wilson, and Eugene H. Rennick, Jr., both of Toulon, for appellee.

SCHEINEMAN, J.

This is an appeal from an order of the County Court in probate, an order which did nothing but place the court's stamp of approval upon a perfectly valid contract of settlement among persons interested in the estate. No evidence has been heard, but the record discloses a spirited battle of motions and pleadings which will not be detailed here. The essential facts are these:

Margaret E. Ham died intestate survived by six children and six grandchildren, children of a deceased daughter. Letters of Administration were issued to one of the sons, George B. Ham. The inventory values the estate at something over $50,000. Another son, Forest B. Ham, filed claims against the estate totaling some $14,000. Apparently most of the heirs deemed the claims substantially justified. After some negotiations, the administrator filed a petition for authority to compromise with the claimant.

One of the heirs, Geneva Marshall, heir to $\frac{1}{7}$ of the estate, filed an objection. Upon a hearing with all factions represented by counsel, the court sustained the motion and dismissed the petition on December 21, 1962.

After some further negotiations, 11 of the 12 heirs entered into a contract of settlement whereby Forest B. Ham is to receive $\frac{6}{7}$'s of $11,000 out of their $\frac{6}{7}$'s of the estate, and he covenanted not to litigate or pursue his claim against them or their interest in the estate. It was expressly declared that no claims were released, and it left pending his claims so that he is free to pursue them against the $\frac{1}{7}$ of the estate. There was also a proposal that Forest Ham purchase the remaining personal property in the residence for $500.

93

■■■■

It was listed in the inventory at a value of $100. The order appealed from makes no mention of this proposal concerning personal assets.

This settlement agreement was filed with the court and on May 6, 1963, the court approved it. A written order was filed on that date, but the minute on the same date recites "following order entered nunc-pro-tunc as of 21 December 1962." The written order construes the contract to be a covenant and not a release, affecting $6/7$'s of the estate, and covenanting to save harmless the $6/7$'s from further costs and attorney's fees, in litigation affecting the remaining $1/7$.

■ We agree with the appellant that this order was not based on any petition or motion then pending. And it was objected to and entered over the protest of the one heir. We also agree that the attempt to enter the order nunc pro tunc had no validity. To make a valid nunc pro tunc order, there must be some minute, note, or memorandum made at the previous date, upon which it may be justified. It cannot be justified merely on the recollection of the judge, nor can it be used to change a previous order. 23 ILP 203. When no action was taken within 30 days to change the December order, the court lost the power to change it.

Whatever legal effect the December proceedings had, if any, has not been changed, and this administrator has no authority by virtue of court order to compromise any claim. What may be his common-law powers is not involved in this appeal.

■■ None of the foregoing has anything to do with the voluntary settlement made by some of the heirs with the claimant. Adults having an interest in litigation have a personal right to negotiate and settle. Persons whose rights are affected by litigation, present or prospective, have a right to buy their peace by payment for a covenant or a release. Others hav-

ing a similar interest cannot prevent a settlement by those willing to agree to it. This is so commonly done that it is amazing to find competent attorneys having any doubt about it. And it is so rare that a settlement is attacked, there is paucity of authority on it.

"A covenant to sue is not a release, but it is to be distinguished from a release, and the distinction, although technical or artificial, is clear. The difference is one of intent and grows out of the construction placed on the terms of the instrument, since a covenant not to sue is not a present abandonment or relinquishment of a right or claim but merely an agreement not to enforce an existing cause of action, and *although it may operate as a release between the parties to the agreement, it will not release a claim against joint obligors, . . . .*" 76 CJS (Release) Sec 3. (Emphasis supplied.)

In 16 Am Jur (Desc & Dist) Sec 145, it is said of settlements in estates: "The settlement is subject to, and must provide for, testamentary charges and rights of creditors." Note 17 thereunder states:

"The settlement may provide for the payment of certain debts or charges against the estate and designate funds or property out of which payment is to be made." Haven v. Foster, 9 Pick (Mass) 112, 19 Am Dec 353.

Only a creditor who can show some injury to himself, however, can raise any question as to the settlement. (Ibid.)

Many settlements require court approval because minors are involved. In this case all interested persons are adults. Therefore, it was not necessary to have the court approve the settlement, but it was desirable because the order makes the contract a matter of record and thus it may protect the estate from claims of possible future assignees who have no actual notice. Of course, the parties to the agreement

cannot compel the dissident heir to join with them, nor can she prevent them from acting without her.

Settlements are favored by the courts as a means of discouraging needless litigation. And family settlements are especially favored on grounds of public policy upholding the honor and peace of families. 16 Am Jur (Desc & Dist) Sec 145, Note 9.

As some appellees suggest, perhaps if the 11 heirs in the settlement had borrowed the money and paid cash, the contract might not have been questioned. It may be an unusual circumstance that in this case payment was by assignment of interest in the estate, authorizing the administrator to pay the covenanter accordingly.

The administrator, upon making distribution, will pay $6/7$'s of $11,000 to the claimant, deducting that amount pro rata from the shares of the covenantees. Whether the dissident heir wins or loses by not joining in the contract, depends upon the amount eventually allowed on the claims, since $1/7$ of the amount allowed affects her share in the estate.

█ The settlement agreement stands on its own feet, and the order appealed from adds nothing to it and takes nothing from it. It merely provides a record of a voluntary settlement and assignment, otherwise it is surplusage. There being nothing for this court to affirm or reverse, the appeal is dismissed.

Appeal dismissed.

CULBERTSON, P. J. and ROETH, J., concur.