In the Matter of the Estate of George A. Glenos, Deceased.

Bessie Alessis, Petitioner-Appellant, v. A. K. Mantas, as Executor of the Estate of George A. Glenos, Deceased, Respondent-Appellee, Constantine G. Drugas, Petitioner.

Constantine G. Drugas, Petitioner-Appellant, v. A. K. Mantas, as Executor of the Estate of George A. Glenos, Deceased, Respondent-Appellee.

Gen. Nos. 49,316, 49,320.

First District, Fourth Division.

June 24, 1964.

Rehearing denied July 9, 1964.

George D. Karcazes and Max Chill, of Chicago, for appellant, Bessie Alessis.

Kangles, Getto and Bunge, of Chicago, for appellee.

Morgan, Halligan & Lanoff, of Chicago (Samuel M. Lanoff, and Charles R. Purcell, Jr., of counsel), for appellant, Constantine G. Drugas.

Kangles, Getto and Bunge, of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Appellants, Bessie Alessis and Constantine G. Drugas, filed petitions in the Probate Court of Cook County alleging that the executor of the estate of George A. Glenos was guilty of attempted fraud and gross mismanagement and praying that he be removed from his position. The court entered an order denying the petitions and assessing costs against the petitioners. From this order both petitioners appeal.

The evidence discloses that George A. Glenos died on October 9, 1961, and that on November 28th of that year A. K. Mantas was appointed executor of the estate. During the period of administration, in the Spring of 1962, the executor and his attorney, Drugas, found that in order to pay specific bequests, claims and expenses it would be necessary to sell some of the real property of the estate located in Cicero. Drugas testified that at this time he suggested that the executor first contact the tenants of the premises in order to ascertain whether they were interested in purchasing the property. The executor stated that he would do so.

In August or September of that year, the executor notified Drugas that he was having difficulty locating a purchaser. Drugas testified that he told the executor that the best procedure to follow would be to list the property with several real-estate brokers in the area to see if they could locate a buyer. The executor retained the services of an acquaintance, one Constantine Mitchell, as the exclusive broker for the property. Mitchell, originally from the same region in Greece as the executor, was a self-employed accountant, real-estate and insurance broker. He was licensed to sell real estate by the State of Illinois, but was not licensed in this capacity by either the City of Chicago or the Town of Cicero. The evidence

further revealed that Mitchell had never sold any real estate in the vicinity of the premises in issue nor had he sold any real estate at all since 1956.

The evidence showed that the broker, Mitchell, placed an advertisement for the property in the Chicago Tribune, but that he did not put a "For Sale" sign on the premises nor did he bring any prospects to inspect the property. On or about October 30, 1962, the executor telephoned his attorney and stated that the broker had received an offer of $42,500, that it was the best offer made, and that he was going to accept it. Drugas advised him to consult with the heirs before doing anything. On November 5th the executor brought an offer to buy for $42,500 to Drugas' office signed by the executor and by one Thomas Chiampas.* Drugas then wrote a letter to each of the heirs informing them of the offer and advising them that unless they equaled or bettered the offer within seven days, the executor would consummate the sale for $42,500.

Bessie Alessis, one of the heirs and a petitioner, testified that shortly after she received the letter from Drugas she called Steven Marecek, one of the tenants of the Cicero property, and asked if he was still interested in purchasing the property. He indicated that he was. Drugas testified that within a few days thereafter a contract of sale for $54,000, signed by Mr. and Mrs. Marecek, was presented to him by the Mareceks' attorney along with an earnest money check for $1,000. He then presented this contract to the executor who signed it while maintaining that he was innocent of any wrongdoing.

Marecek, the buyer, testified that, some six months earlier in April of that year, the executor had asked

---

* The executor testified that he had known Chiampas since 1930 when they both resided in Nestani, Greece, and that Chiampas had visited his home but was not considered a "friend."

him if he was interested in purchasing the property and that he had said that he was; that he believed that his offer at that time was for $54,000; that after the April conversation he asked the executor about the sale "but that's as far as it went"; that during the month of August in a conversation with the executor, he repeated his offer of $54,000; that later the executor returned to his (Marecek's) store with Mitchell, the broker, and Marecek again repeated his offer. Marecek stated that the executor told him that Mitchell would be handling the sale of the property and asked if $54,000 was his highest offer, and that he had said that it was.

The executor testified that Marecek's offer to him was for $35,000, not $54,000, and that Marecek's interest was merely in obtaining a long-term lease, not in closing a sale. He denied ever having been offered $54,000 from Marecek until the ultimate contract of sale was arrived at through the offer to Bessie Alessis.

The proceedings below were initiated by the filing of petitions for removal by Mrs. Alessis and Drugas, the attorney for the estate. Drugas filed his petition as an officer of the court, following a conference with Anthony J. Kogut, Assistant to the Judge of the Probate Court. The petitions allege suspicion of fraudulent conduct by Mantas in his capacity as executor; to wit, that he sought to accept an offer to purchase property of the estate for $42,500 from an acquaintance, Chiampas, while disregarding a bona fide offer of $54,000 from a tenant who subsequently did acquire it for that price.

■ ■ As an attorney and officer of the court, Drugas was under an obligation to inform the court of his suspicion of fraud, on the part of the executor. People ex rel. Attorney General v. Beattie, 137 Ill

553, 574, 27 NE 1096; In re Alschuler, 388 Ill 492, 503, 58 NE2d 563. Drugas consulted with Kogut, Assistant to the Judge of the Probate Court, and at the latter's suggestion confronted the executor with his suspicions. The executor denied any wrongdoing. Only then were these proceedings for removal started. We believe that it was clearly the duty of the attorney, and the right of Mrs. Alessis, an heir, to bring these proceedings for removal * when there existed reasonable grounds for suspicion as to the executor's management of the estate. Cf. People v. Stollar, 31 Ill2d 154, 201 NE2d 97.

■■ In determining that "fraud must be proven by evidence which is clear and convincing," the court below clearly misapprehended the burden of proof in this case. Wylie v. Bushnell, 277 Ill 484, 506, 507, 115 NE 618. The executor of an estate is a fiduciary and is accordingly held to the highest standard of fair-dealing and diligence. Nonnast v. Northern Trust Co., 374 Ill 248, 261, 29 NE2d 251; In re Estate of Burger, 16 Ill App2d 510, 514, 149 NE2d 105. The courts will closely scrutinize the executor's behavior to insure that these high standards are adhered to. Majewski v. Gallina, 17 Ill2d 92, 102, 160 NE2d 783. Therefore, it was not the burden of the petitioners to prove the fiduciary guilty of fraud, but rather the burden was on the executor to prove his conduct be-

---

* Section 276 of the Probate Act (IRS, 1963, ch 3, § 276) provides:

"REMOVAL OF EXECUTOR, ADMINISTRATOR OR ADMINISTRATOR TO COLLECT.) On the verified petition of any interested person or upon the court's own motion, the probate court may remove an executor, administrator, or administrator to collect for any of the following causes: . . .
(c) When the executor or administrator wastes or *mismanages* the estate . . ." (Emphasis added.)

yond reproach once reasonable grounds for suspicion were shown to exist.* Hopkins v. Loeber, 332 Ill App 140, 147, 74 NE2d 39.

██ The petitioners certainly presented a prima facie case of mismanagement upon a showing that the executor retained the services of a personal acquaintance as broker to sell the property when this broker was not licensed to sell property in Cicero; when he was not primarily a broker and had sold no real estate since 1956 and had never sold property in the area. Furthermore, the testimony of Marecek that he had on several occasions indicated to the executor and "broker" his interest in purchasing the property for $54,000; their failure to follow through on this interest, coupled with the inferences which may legitimately be drawn from the executor's entering into a contract of sale for $42,500 with another former compatriot, and his failure to produce this would-be purchaser as a witness in his behalf, definitely establish reasonable grounds for suspicion as to the executor's honesty or as to his business acumen. This suspicion is enhanced by the fact that although the broker Mitchell had an exclusive contract for the sale of the property for ninety days commencing September 15, 1962, no commission was ever paid him on the $54,000 sale made within this period. The contract of sale with Marecek did not provide for any broker's fee, and apparently Mitchell has never sought to collect any. Indeed, the executor testified that Mitchell never even sought reimbursement for advertising costs incurred in connection with his listing. Because of the suspicious circumstances surrounding the relations between the executor, the broker, and

* We also note that the court below severely and unfairly chastised Mr. Karcazes, attorney for Bessie Alessis, for improperly preparing his case when, in fact, the burden of proof rested upon the executor.

96

the would-be purchaser, the burden was clearly on the executor to establish his innocence in view of his fiduciary obligation and the evidence against him.

In In the Matter of Corrington, 124 Ill 363, 16 NE 252, the Supreme Court, at pages 367, 368, discussed the duties of an executor dealing with the sale of land of the estate under his care in the following terms:

> Having accepted the trust, he was bound to execute it with integrity, and while he cannot be held liable for mistake in matters of judgment or opinion, where ordinarily prudent business men might be alike mistaken as to what was for the best interests of the estate, *it was his manifest duty to make a fair and honest sale, for the best price reasonably obtainable.* He was required to act in good faith, and with that degree of reasonable diligence ordinarily employed in like business affairs by men of common prudence. . . . (Emphasis added.)

In the case of Johnson v. Johnson, 72 Mo App 386, where an executor sold land to his son-in-law for $1,261 when it could have been sold for $1,600, the court said at page 389:

> If the defendant as executor has sold the property of the estate to his son-in-law, or any other person, for less money than offered by others at the time, he ought to be answerable for the difference. It is something more than mismanagement; it was to say the least, *willful waste.*

The fact that the mismanagement or attempted fraud here was merely incipient, with the estate suffering no pecuniary loss, should not be considered relevant in proceedings to remove the executor for mismanagement, as one reason for removal is certainly to protect the estate from future mismanagement.

97

The standard of conduct for a fiduciary is set out in Nonnast v. Northern Trust Co., 374 Ill 248, 29 NE 2d 251, where the Supreme Court at page 261 quotes from an opinion of Mr. Justice Cardozo:

> A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the *punctilio* of an honor the most sensitive, is then the standard of behavior.

Therefore, unless the executor had a satisfactory explanation for his conduct it was the duty of the Probate Court to grant the petitions for removal.

The executor's explanation was merely to deny that he had ever received an offer of $54,000 from Marecek. Although it is not disputed that the trial judge is the person in the best position to resolve questions of credibility, the judge's finding is in our opinion unsupported by the weight of the evidence. The testimony of a disinterested third-party witness, who claimed to have made several offers to purchase at $54,000 and who at the time of the Probate Court proceedings had in fact purchased the property for the $54,000 figure, should certainly have been given more weight than that of one of the parties whose conduct had already been shown to be highly suspicious. Podolski v. Stone, 186 Ill 540, 547, 58 NE 340.

Furthermore, the executor's failure to call his acquaintance and would-be purchaser, Chiampas, as a witness in his behalf must lead to the inference that Chiampas' testimony would not have been favorable to him. As the Court stated in Hopkins v. Loeber, supra, at page 147: "A trustee who has the burden of explaining away a transaction should also explain the absence of a material witness to the transaction."

A reviewing court will not disturb a finding of a judge who saw the witnesses and heard them testify, where the evidence is conflicting, unless the

98

error is clear and palpable. Sifford v. Cutler, 248 Ill 340, 349, 94 NE 156; Warner v. Gosnell, 8 Ill2d 24, 36, 132 NE2d 526.

We are compelled to hold that the order of the Probate Court finding that the executor was not guilty of mismanagement and assessing costs against the petitioners under section 41 of the Civil Practice Act * (IRS, 1963, ch 110, § 41) was "clearly," "plainly" and "indisputably" erroneous and thus contrary to the manifest weight of the evidence. City of Chicago v. Atkins, 19 Ill App2d 177, 153 NE2d 302. The Court's denial of the petitions to remove the executor must therefore be reversed. A fortiori, the Court's assessment of costs against the petitioners for the filing of a frivolous suit must also be reversed.

The judgment of the Probate Court is reversed and the cause is remanded to the Circuit Court with directions to grant the petitions for the removal of the executor and to enter judgment thereon.

Reversed and remanded with directions.

ENGLISH, P. J. and McCORMICK, J., concur.

---

* "Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial."