*In re* ESTATE OF SCOTT W. LUCAS, Deceased.—(SCOTT W. LUCAS, JR., Ex'r of the Estate of Scott W. Lucas, Appellant, *v.* DAVID F. ALEXANDER, Special Adm'r of the Estate of Scott W. Lucas with Will Annexed, Appellee.)

Fourth District   No. 13613

Opinion filed May 31, 1977.

GREEN, J., dissenting.

Burditt and Calkins, of Springfield (Thomas J. Immel and William M. Giffin, of counsel), for appellant.

David F. Alexander, of Havana, for appellee.

Mr. JUSTICE HUNT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Mason County authorizing the filing of a lawsuit for mismanagement of estate assets by a special administrator with will annexed and removing the original executor as a personal representative.

Scott W. Lucas, Sr., died testate February 22, 1968. Scott W. Lucas, Jr., appellant herein (hereafter Lucas), and Allen T. Lucas, Sr., were appointed coexecutors. The will created a testamentary trust of certain assets, the income payable to Lucas for life and, upon his death, the remainder to his children, some of whom are still minors. A portion of the estate consisted of stock and securities. Apparently, the testator, while living, entrusted those assets to a Washington, D.C., brokerage firm with the apparent power to list the securities in the street name of the brokerage firm and to invest and reinvest within their discretion. Equally as apparent, this practice was continued by the coexecutors without court authority. The estate lay dormant from 1970 until December 7, 1972, when the circuit court ordered the estate to close in 21 days. However, no further action ensued until after the death of coexecutor Allen T. Lucas, Sr., on November 19, 1973. Thereafter, Lucas, as the surviving coexecutor, sought the assistance of a different law firm. A final account and supplement thereto were prepared, filed, and presented to the court, and were approved and filed on August 5, 1974, and October 10, 1975, respectively. In connection with the first report, attorney David F. Alexander was appointed guardian ad litem for the minor remaindermen. Alexander's perusal of the stock accounts as reported by the brokers in Washington, D.C., showed some irregularities including self-dealing by the brokers and the loading of the estate portfolio with highly speculative and worthless stock. The resultant losses exceeded $90,000. Lucas, as executor, then filed his petition to extend the time to close the estate and for leave to file suit in Federal court against the stockbrokers for violation of Federal regulations, for an accounting, and for damages. The hearing on the supplemental account, the attorneys' fees, and the petition for leave to file suit was held on October 8, 1975.

The testimony from the attorneys for Lucas reflected, *inter alia,* that unexplained delays in the handling of the estate by original counsel had resulted in late filings and determinations of Federal estate tax and Illinois inheritance tax returns and an ensuing Federal estate tax lien in the amount of $40,000. There was testimony of late filing of fiduciary income tax returns, failure to pay the tax upon the filing of the returns, and other errors which resulted in interest and penalties. The original attorney for the estate was required to refund $10,000 of his $40,000 attorney fee when

he was replaced. A representative of the new firm of attorneys testified that he and his associates spent a total of 618 hours in 1974 and 1975 attempting to correct previous errors and in preparing the final reports. Prior to the October 8 hearing, they had received attorneys' fees in the amount of $7,871.86 of a claimed amount of $25,000. It was not until 1975, seven years after the estate was opened, that the estate assets were delivered piecemeal to the Havana National Bank as trustee. All of these problems were in addition to the operation of the securities account by the stockbrokers without any apparent supervision.

The guardian ad litem filed an objection to the petition of the executor to file suit against the stockbrokers because of a possible conflict of interest on the part of the executor. It was pointed out in the petition to extend and in the testimony that Lucas had been an executor of the estate since his father died in 1968, had therefore been accountable to the court and the will's beneficiaries for the penalties and extra legal fees caused by poor administration, and had apparently been unaware of or unconcerned by the investment practices of the stockbrokers. The guardian ad litem therefore requested that a disinterested person be named special administrator with the will annexed, apparently with power to join Lucas as a party defendant, if necessary, to obtain a full accounting and to respond in damages should any misconduct be shown arising out of any alleged nonfeasance in his court-appointed office.

At the conclusion of the hearing, the trial court announced his decision that a suit would be filed; however, the suit would not be filed by Lucas in his capacity as executor because of the reasons pointed out by the guardian ad litem and the testimony elicited. Excerpts of his oral ruling are as follows:

> "Now relative to my position and I am freely willing to state my position relative to appointment or to the authorization to the executor. I'm willing to state and it's not in accordance with the prayer of the petition * * * the only thing that bothers me granting the prayer of this petition as I have said, is that I can see where Scott W. Lucas, Jr., as executor could have possibilities, probably could have liabilities not from intention or anything of that kind, but just liable on his bond as executor. And in view of that fact, * * * I'm taking into consideration the objections made by the Guardian ad Litem, Mr. David Alexander, to the allowance of that prayer. * * * I have a duty and obligation to preserve or recoup any assets possible and that * * * the Court should enter an order directing a suitable person to pursue this law suit * * * [i]n a representative capacity for the liquidation of that.
>
> * * *

MR. GIFFIN: But we were just going to sue the brokerage firm

initially and let them bring in a third party action or anything they wanted to bring in or join as defendants. The thought being that they were the primary agents responsible for this and knew what they were doing at the time they did it, by the testimony of Mr. Noonan, and it is that simple, Your Honor * * *.

THE COURT: But, it short-changes the possibility of liability that the attorney or either of the co-executors might have and I don't like to preclude that because this method of yours does preclude it. I don't know if there is a liability. I don't think any of us know whether there is a liability but we cannot shut our eyes to it. * * * [A]s to who that person might be, gentlemen, I'm going to reserve judgment on that because I want to get someone that is going to be satisfactory to all of you. And whom you can work with and yet has the knowledge and the know how."

After the hearing, the court requested an order be drawn appointing a special administrator. As the court stated at a later hearing:

"As I explained to you in chambers just now, the theory that I have maintained from the start when we had the first hearing on the petition for authority to pursue the lawsuit and that was on October 8, 1975, and at that time I indicated that I was going to deny the prayer of the petition to prosecute this lawsuit, so I indicated to Mr. Giffin, to Mr. Blane, Mr. Alexander, and Mr. Boggs. I will admit that the order was not filed until December 2 because the order was rewritten some three or four times between October 8, 1975 and December 2, 1975."

As the order on the petition for leave to sue was being prepared pursuant to the court's oral rulings, Lucas, without leave of court, in direct violation of the announced ruling of the court on October 8, 1975, and as executor, had prepared and filed suit in Federal court against the stockbrokers on December 1, 1975. Without knowledge of that transaction, the court received and signed its order on December 2, 1975, appointing David F. Alexander as special administrator to file the suit. Notice of appeal was filed by Lucas on December 23, 1975. On December 31, 1975, on its own motion, upon learning of Lucas' actions in filing the suit without authority, the court signed an order amending its December 2 order striking the appointment of David F. Alexander and the authorization to file suit, and, instead, entered a citation against Lucas to show cause why he should not be removed as executor, based, in part, upon the evidence received at the October 8, 1975, hearing and his wilful disobedience of the announced decision of the court forbidding him to file suit, as executor, against the stockbrokers. Hearing on the citation was held on February 10, 1976. The court took notice of the facts received in previous proceedings in October and indicated it was going to remove

Lucas as executor because of the apparent conflict of interest and not upon any findings of mismanagement or a violation of court orders, which the trial court specifically reserved for a further hearing. Lucas offered no testimony to justify his actions or explain away the possible conflict of interest. The court found that a conflict of interest, based on Lucas' possible personal liability, required his dismissal as executor. A memorandum order was entered on February 11, 1976, directing, in part, that Lucas be removed as executor and that he turn over to the special administrator with will annexed any assets still in his possession to be held by the special administrator pending further order of the court. The court also appointed David F. Alexander as special administrator with power to pursue any action against the stockbrokers and /or others (including Lucas and former attorneys) who might be responsible to the estate in damages for possible mismanagement of the estate's assets. Lucas appeals from both the December 2 and February 11 orders.

No procedural question was raised on appeal concerning the order of December 2, the notice of appeal filed December 23, 1975, the subsequent amendment of this order on December 31, 1975, and the hearing on the citation which resulted in the February 11, 1976, order. For purposes of appeal, these are treated as a series of orders to be considered in their entirety.

■■ The grounds for appointing the special administrator with will annexed include the possible conflict of interest of the representative based upon his inability to effectively administer the affairs of the estate because of his potential liabilities from alleged mismanagement of estate assets. This situation arises more frequently where the representative has a claim against the estate and the court appoints a special administrator to defend the estate from the claim. (See Ill. Rev. Stat. 1973, ch. 3, par. 200.) It also may arise where the representative is a surviving joint tenant of a savings account and the question is raised by the heirs whether or not the account was intended to be a joint account or an agency account. *In re Estate of Oliver* (1974), 21 Ill. App. 3d 416, 315 N.E.2d 331.

The grounds for involuntary removal of an executor appear in section 276 (Ill. Rev. Stat. 1973, ch. 3, par. 276). Section 276(a) sets forth 10 grounds for the removal of an executor, the last of which is: "There is other good cause." The executor may only be removed for the violation of one of these 10 grounds. (*In re Estate of Breault* (1963), 29 Ill. 2d 165, 193 N.E.2d 824; *In re Estate of Long* (1971), 1 Ill. App. 3d 372, 273 N.E.2d 160.) An executor will be removed where there exists a conflict between the personal interests of the executor and the interests of the estate (*In re Estate of Benson* (1969), 111 Ill. App. 2d 251, 250 N.E.2d 281; *In re Estate of Abell* (1946), 395 Ill. 337, 70 N.E.2d 252), or where " 'other good cause for removal' may be seen in a conflict of interest which interferes with the

objective administration of the estate." *In re Estate of Phillips* (1972), 3 Ill. App. 3d 1085, 1090, 280 N.E.2d 43, 46.

■■ The power to remove an executor cannot be exercised in an arbitrary manner but only for good cause reflected in the record. (*Wilkinson v. Nowers* (1920), 217 Ill. App. 314.) Once "reasonable grounds" to support the removal are introduced into the record, the executor will have the burden of proving his fitness to retain office. (*In re Estate of Glenos* (1964), 50 Ill. App. 2d 89, 200 N.E.2d 65.) The office of executor is created by statute. Although the nomination of an executor by the decedent is given every consideration by the court, the appointment is left to the sound discretion of the court. An executor has a fiduciary relationship to the creditors, heirs, and beneficiaries of the estate, and is also directly accountable to the court. (*In re Estate of Storer* (1971), 131 Ill. App. 2d 1049, 269 N.E.2d 352; *In re Estate of Kuhn* (1967), 87 Ill. App. 2d 411, 231 N.E.2d 97.) The representative must post bond assuring the integrity of his accounts to the creditors and recipients. He has a responsibility to avoid wasting estate assets, to properly report and pay tax liabilities without incurring penalties and interests, and to liquidate or exchange estate assets pursuant to a power granted him in the will or by leave of court. He may be responsible for mismanagement by his agents through lack of attention, failure to obtain court authority, or wilful neglect. The law applies a "prudent man" test. Horner, Illinois Probate Law and Practice § 348 (1976); see also Annot., 28 A.L.R.3d 1191 (1969).

■■ In the instant case, the court found—and quite properly on the evidence before it—that a claim might someday lie against Lucas to account and perhaps respond in damages for the financial losses in this estate based upon apparent neglect, inactive supervision of the assets and dilatory computation and payment of tax liabilities. Lucas obviously could not sue himself for any alleged dereliction of duty, nor could he avoid liability by suing his careless steward. The appointment of David F. Alexander as special administrator with will annexed was both necessary and proper.

While the trial court here reserved the issue of possible liability from mismanagement and/or disobeying the court's order for further hearings, the evidence received to that point certainly laid a solid basis for a finding of conflict of interest sufficient to justify Lucas' removal as executor. *In re Estate of Kuhn; In re Estate of Phillips.*

For the reasons set forth, the judgment of the trial court is affirmed.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE GREEN, dissenting:

I agree with the majority that the trial court properly appointed a special administrator for the purpose of pursuing the litigation. The trial court had sufficient information before it to determine that the surviving executor might be subject to liability for the losses for which the suit sought compensation.

I disagree with the majority determination that the possibility that the surviving executor might have personal liability was sufficient to discharge him as executor. He was the designee of the testator and had a substantial interest in the estate. No wrongdoing had been proved against him and he had no conflict of interest except as to the litigation contemplated. I am unaware of any case permitting discharge of an executor merely because of a conflict that regarded one bit of litigation. *Benson* involved the appointment of a special administrator as to particular litigation and *Abell* with the initial appointment of a personal representative. In *Phillips,* the personal representative's conflict of interest concerned his relationship to a corporation whose shares were the principle asset of the estate. The conflict would have continued throughout the administration of the estate.

Accordingly, I would *reverse* the order removing the surviving executor and appointing an administrator with the will annexed and remand the case to the trial court with directions that the order appointing the special administrator be reinstated.